# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

v.                                     Case No: 6:16-cv-2123-Orl-31DCI

**J. WILLIAM ENTERPRISES, LLC, JESS KINMONT, JOHN P. WENZ, JR. and PRO TIMESHARE RESALES OF FLAGLER BEACH LLC,**

    **Defendants.**

## ORDER

This Matter comes before the Court on the Plaintiff's Motion for Summary Judgment (Doc. 144), the Defendants' Responses in Opposition (Docs. 160, 165-1), and the Plaintiff's Replies (Docs. 172, 174).

**I.    Background**

The Federal Trade Commission ("FTC") filed a Complaint on December 12, 2016. Doc. 2. In the Complaint, the FTC alleged violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. 310 et seq. On August 2, 2017, the FTC filed a Motion for Summary Judgment. Doc. 144.

The FTC seeks summary judgment on Counts I, II, III, and IV. Count I alleges that the Defendants made misrepresentations in violation of 15 U.S.C. § 45(a). Count II alleges that the Defendants made misrepresentations to induce customers to pay for goods or services in violation of the TSR. Counts III and IV allege that the Defendants made calls to telephone numbers on the

National Do Not Call Registry in violation of the TSR and that the Defendants failed to pay required National No Call Registry fees in violation of the TSR.

The undisputed facts are as follows. Defendant Jess Kinmont ("Kinmont") is the owner of J. William Enterprises, LLC ("JWE"), which he organized in 2009. JWE obtained the fictitious name of "Pro Timeshare Resales" in October of 2011. In 2012, JWE began selling advertising services under the name of Pro Timeshare Resales ("PTR"). Kinmont Dep. 1, Doc. 144-4, at 43:8-12. Defendant John Wenz ("Wenz") formed Pro Timeshare Resales of Flagler Beach, LLC ("PTRFB") "with the purpose of selling the advertising services of JWE." Wenz. Dep. 1, Doc. 144-13, at 23:10-24. JWE became affiliated with PTRFB in March of 2012. Kinmont Dep. 1, Doc. 144-4, at 43:9-44:13. Under the agreement between JWE and PTRFB, JWE would pay PTRFB an agreed-upon percentage of successful sales, minus cancellations, charge-backs, and expenses. Both JWE and PTRFB operated under one Florida telemarketing license.

## II. Legal Standards

Courts may grant summary judgment "[w]hen the only question a court must decide is a question of law." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). A court "must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Hinson v. Clinch County, Ga. Bd. Of*

*Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000)).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

## III. Analysis

### a. Counts I and II

In order to show that the Defendants violated Section 5(a), the FTC must show "'(1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material.'" *Fed. Trade Comm'n v. Lanier Law*, LLC, 194 F. Supp. 3d 1238, 1273 (M.D. Fla. 2016) (quoting *F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003)). If a representation would likely be "relied upon by a reasonable prospective purchaser," it is material. *Id.* at 1274. (quoting *F.T.C. v. Washington Data Res.*, 856 F. Supp. 2d 1247, 1272 (M.D. Fla. 2012), *aff'd sub nom. F.T.C. v. Washington Data Res., Inc.*, 704 F.3d 1323 (11th Cir. 2013)). The Court presumes that express claims made in order to induce the

purchase of a service are material. *Id.* Like Section 5 of the FTC Act, the TSR prohibits sellers and telemarketers from "[m]aking a false or misleading statement to induce any person to pay for goods or services." 16 C.F.R. § 310.3(a)(4). "Identical principles of deception from Section 5 of the FTC Act apply to the TSR, and a violation of the TSR amounts to both a deceptive act or practice and a violation of the FTC Act." *Washington Data Res.*, 856 F. Supp. 2d at 1273. In order to hold individuals liable for such violations, the FTC must demonstrate that the individual defendants directly participated in, or had authority to control, the practices. *Lanier Law*, LLC, 194 F. Supp. 3d at 1285 (citing *Wash. Data Res.*, 856 F. Supp. 2d at 1276).

The FTC argues that the Defendants made misrepresentations to consumers, and it has produced voluminous evidence that supports this contention. Citing language used on the Defendants' website and in brochures and other documents, in addition to statements from numerous consumer declarations, the FTC claims that the Defendants misrepresented that they would sell or rent customers' timeshares, rather than merely advertise the availability of the timeshares for purchase or rental. However, the FTC's evidence does not stand unrebutted. PTRFB and Wenz produced evidence indicating that Wenz forbade employee telemarketers from stating that they would "buy or sell or rent timeshares on behalf of any customers." *E.g.*, Simmons Aff., Doc. 160-1, at 2; Mabrey Aff., Doc. 160-2, at 3. JWE and Kinmont point to similar evidence providing that Kinmont prohibited employees from leading prospective clients to believe that JWE could guarantee a sale or rental of property within any time frame or that JWE had a buyer or renter for the prospective client's property. *E.g.*, Jones Decl., Doc. 15, at 3; Holmes Decl., Doc. 17, at 3-4. Viewing the evidence in the light most favorable to the non-movant, as the Court must, there remain material disputes of fact as to whether the Defendants are liable for misleading material representations in violation of the FTC Act and the TSR.

### b. Count III

The TSR prohibits telemarketers from engaging in, or sellers from causing telemarketers to engage in, conduct that is abusive. 16 C.F.R. § 310.4(b). Abusive conduct includes "[i]nitiating any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call registry." § 310.4(b)(1)(iii). However, initiating such telephone calls is not considered abusive conduct for purposes of the TSR if the seller or marketer can show that either (1) the seller has obtained express written agreement permitting such calls or (2) the seller has an established business relationship with the person to whom that number belongs and the person has not stated that she does not wish to receive such calls. *Id.* Additionally, a seller can avoid liability for violating § 310.4(b)(1)(iii)

> . . . if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:
>
> **(i)** It has established and implemented written procedures to comply with § 310.4(b)(1)(ii) and (iii);
>
> **(ii)** It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to § 310.4(b)(3)(i);
>
> **(iii)** The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with § 310.4(b)(1)(iii)(A);
>
> **(iv)** The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to § 310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;
>
> **(v)** The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to § 310.4(b)(3)(i); and
>
> **(vi)** Any subsequent call otherwise violating paragraph (b)(1)(ii) or (iii) of this section is the result of error and not of failure to obtain any information necessary

> to comply with a request pursuant to paragraph (b)(1)(iii)(A) of this section not to receive further calls by or on behalf of a seller or charitable organization.

§ 310.4(b)(3). The seller must be able to demonstrate that it did all of these things as part of its routine business practice in order to avoid liability. *Id.*

Citing to consumer declarations averring that calls were made to telephone numbers despite the presence of those numbers on the Do Not Call Registry, the FTC argues that it is entitled to summary judgment as to Count III. Mot. at 34. The FTC submitted numerous consumer declarations that indicate both JWE and Flagler employees made calls to telephone numbers that were registered with the Do Not Call Registry. *See, e.g.,* Deshon Declaration, Doc. 2-5, at 98-100; Farnham Declaration, Doc. 2-6, at 72-73; Shutler Decl., Doc. 2-8, at 13-14, 17, 22-24, 27-28, 31. JWE and Kinmont aver that "JWE purchased leads that Defendants reasonably believed were 'scrubbed' for compliance with the Do Not Call registry." Response, Doc. 165-1, at 15. PTRFB and Wenz claim that "JWE and Kinmont misled Wenz and PTRFB into believing that the lists were 'scrubbed' and therefore compliant." Response, Doc. 160, at 15. While the Defendants claim that they believe the lists of phone numbers they were using had been scrubbed, they do not contest that they or their employees made calls to phone numbers that were listed on the Do Not Call Registry. Furthermore, the language in the TSR does not limit its application to those who "believe" that a telephone number they called was listed on the Do Not Call Registry. The FTC has submitted evidence that the Defendants violated the TSR by making telephone calls to numbers listed on the Registry, and the Defendants have not offered any rebuttal evidence.

The Defendants have not alleged that they fall within one of the exceptions to the TSR, much less provided evidence to show that they are not liable. It is clear that the Defendants were the ones providing the employees with the lists of telephone numbers to call, so there is no question

that Kinmont and Wenz had the authority to control this practice. JWE and Kinmont argue in their Response that, under 15 U.S.C. § 45(m), they should not be liable for civil penalties stemming from violations of which they had no actual or fairly implied knowledge, but § 45(m) is inapplicable here, because the FTC is not seeking civil penalties. *See* Reply, Doc. 174, at 7 n.10. The FTC is entitled to summary judgment as to Count III.

c. **Count IV**

The FTC argues that it is entitled to judgment as a matter of law on the issue of whether the Defendants failed to pay the annual fee for the Do Not Call Registry in violation of 16 C.F.R. § 310.8. In support of this claim, the FTC cites to two declarations of Michael Liggins, a Senior Investigator with the FTC. The evidence submitted by the FTC indicates that a search of the Do Not Call Registry section of Consumer Sentinel, performed on August 26, 2016, "did not reveal any record of registration for JWE, PTR, PTR of Flagler Beach, Kinmont, or Wenz." Liggins Decl., Doc. 2-2, at 6. The FTC also cites to a supplemental declaration that provides that Liggins searched the Registry on July 28, 2017, and that the search revealed "that JWE, PTR, PTR of Flagler Beach, Kinmont, and Wenz did not pay the annual fee for access to the telephone numbers within area codes of the consumers they contacted." Third Supp. Liggans Decl., Doc. 144-28, at 5. The Defendants have not produced any evidence that would rebut this; indeed, they have not even alleged that they paid the Registry fees as required. Accordingly, the FTC is entitled to summary judgment on Count IV.

**IV. Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the FTC's Motion for Summary Judgment (Doc. 144) is **DENIED** as to Counts I and II, and **GRANTED** as to Counts III and IV. At the conclusion of the case, judgment in favor of the FTC will be entered as to Counts III and IV.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 7, 2017.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party